Argued and submitted February 13, affirmed May 6, reconsideration denied July 24,
petition for review allowed September 3, 1987 (304 Or 149)
See later issue Oregon Reports

LIPSCOMB et al,
*Respondents,*

*v.*

STATE OF OREGON
by and through the
STATE BOARD OF HIGHER EDUCATION et al,
*Appellants,*

*and*

WHITELAW,
*Respondent.*

(85-0618; CA A39708)

736 P2d 571

William F. Gary, Deputy Attorney General, Salem, argued the cause for appellants. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Virginia L. Linder, Assistant Solicitor General, and Richard D. Wasserman, Assistant Attorney General, Salem.

Thomas C. Tankersley, McMinnville, argued the cause for respondents Paul J. Lipscomb, Donna M. Lipscomb, John W. Jensen, Paula M. Bechtold, and Robert D. Laird. With him on the brief were Drabkin, Tankersley and Richardson, McMinnville, and Paul J. Lipscomb, Salem.

Timothy J. Sercombe, and Harrang, Long, Watkinson & Arnold, Eugene, filed the brief for respondent William E. Whitelaw.

Kathleen Beaufait, Chief Deputy Legislative Counsel, and Ted Reutlinger, Deputy Legislative Counsel, Salem, filed a brief *amicus curiae* for Legislative Assembly.

Before Warden, Presiding Judge, and Joseph, Chief Judge, and Young, Judge.

WARDEN, P. J.

## WARDEN, P. J.

This is a taxpayers' action for declaratory relief, challenging the validity of the Governor's veto of portions of a non-appropriation bill. The bill also contained a provision declaring an emergency. Defendants are the State Board of Higher Education, the Department of Higher Education (the Department), the Public Employe's Retirement System (PERS) and several of their officials.[1] Defendants and plaintiffs all moved for summary judgment. The trial court granted plaintiffs' motion, holding that the Governor's authority to veto portions of the bill was limited to a veto of the emergency clause itself. It then entered a judgment pursuant to ORCP 67B, declaring the veto invalid and of no legal effect. In addition to that declaration, the court granted an injunction prohibiting further payments and requiring defendants to prepare a plan for return to the Department of the money which it had already paid. Defendants appeal. We affirm.

The 1983 legislature passed Senate Bill 137, making a number of changes in PERS. One provision of section 1 amended ORS 237.003(8) to exclude certain earnings of college teachers from the definition of "salary" or "other advantages" for the purpose of determining employe retirement credits and employer contributions to PERS. The bill contained an emergency clause. The Governor approved the bill as a whole, including the emergency clause, but vetoed this and two other specific provisions of section 1. The legislature did not act on the vetoes at an ensuing special session. Rather, its leadership, following the advice of Legislative Counsel, took the position that the purported vetoes were ineffective. Legislative Counsel included the vetoed provisions in its compilation of the session laws, with a note that the Governor had vetoed them. Or Laws 1983, ch 830, § 1. It included them without comment in the 1983 edition of the Oregon Revised Statutes. ORS 237.003(8)(c)(E), (F), (H) (1983 Replacement Part).[2] The Department and PERS, on the other hand,

---

[1] On plaintiffs' motion, the court added defendant Whitelaw as a representative of the class of affected employes. Although he is nominally a respondent in this appeal, his interests are the same as those of the other defendants and his brief seeks reversal of the trial court's judgment. Legislative Counsel also filed a brief *amicus curiae* on behalf of the Legislative Assembly, urging affirmance.

[2] The 1985 legislature amended ORS 237.003 by four different acts. Each act set out the entire statute, including the vetoed portions, but no act treated those provi-

treated the provisions as ineffective, and the Department made contributions to PERS on employe earnings that would be excluded under section 1.

Whatever power the Governor might have to veto only parts of a bill is found in Article V, section 15a, of the Oregon Constitution:

> "The Governor shall have power to veto single items in appropriation bills, and any provision in new bills declaring an emergency, without thereby affecting any other provision of such bill."

Defendants assert that section 15a is unambiguous and that it allows the Governor to veto any provision in a non-appropriation bill if the bill contains an emergency clause. Plaintiffs argue that the section is ambiguous but that the circumstances surrounding its adoption show that its purpose was to give the Governor the power to veto only the emergency clause itself.

■ Before evaluating the merits of those claims, we first examine arguments defendants make about our role in the case. They give several reasons that we should defer to the Governor's decision that his veto was constitutional. They summarize those reasons as follows:

> "[Defendants first state their position on the merits.] Second, where, as here, the exercise of power by a separate and co-equal branch of government does not interfere with personal rights, the proper scope of judicial review of the propriety of that act is extremely limited. Third, regardless of the scope of the Governor's veto power, the 'check' against abuse of that power is the Legislative Assembly's constitutional power to override the veto. The court should not rise to the legislature's 'defense' when that body declines to act, particularly where, as here, a subsequent Legislative Assembly successfully reenacts the law in question. Finally, principles of equity akin to laches dictate that the court should not overturn a Governor's veto more than 19 months after the fact when to do so would prejudice the interest of innocent third persons."

Defendants misunderstand the nature of the issues which this case presents. The issue is not the scope of our

---

sions as newly enacted. Or Laws 1985, ch 118, § 13; ch 302, § 10; ch 565, § 37; ch 823, § 1. We need not decide whether, as defendants assert, those actions constituted an effective enactment of the provision in question.

review of executive action, nor is it whether we should leave the resolution of a political dispute to the political process. Neither is it whether we should deny plaintiffs the right to challenge questionable executive actions because they delayed too long before bringing their challenge. The issue is more basic: Did certain provisions of a bill which the legislature passed become law and thereby become binding on the executive and the courts? That is a *legal* question for us to decide.

"It is emphatically the province *and duty* of the judicial department to say what the law is." *Marbury v. Madison,* 5 US (1 Cranch) 137, 177, 2 L Ed 60 (1803). (Emphasis supplied.) The validity of the vetoes is before us in a properly presented case and its decision is essential to the determination of the rights of the parties.[3] That our decision may have an impact on a political dispute between the two other branches of government is not an excuse for failing to decide that legal issue. Defendants fail to recognize that the lawmaking process is itself controlled by law. Whether the process has produced a statute is a legal, not a political, question. In answering it we do not intrude where we do not belong; we simply play our constitutional role.[4]

We must decide whether the Governor's actions have had a particular legal effect, not whether the Governor has violated the constitution. Deference and judicial restraint on our part, as urged by defendants, have no application when the issue is whether certain words have become part of the state's statutory law. Our failure to resolve that question might result in a law being ignored or something being considered a law which is not. We turn to the merits.

The parties argue at length over whether section 15a is ambiguous, citing numerous cases and works on grammar and usage in support of their respective positions. We will assume, with them, that we must hold the language to be ambiguous before we may consider extrinsic evidence of the

---

[3] Plaintiffs' rights are, as defendants note, public rather than private in nature. That does not make them less important. Plaintiffs have standing to have those rights determined, and we have no basis for declining to do so.

[4] The legislature's check on the Governor's veto by its power to override is a political, not a legal, check. Its existence has no relevance to whether the Governor's attempted veto is legally valid. That question must be resolved before there is anything for the legislature to override.

intent of the legislature which proposed it and the voters who adopted it. We have considered the arguments of the parties. We read the authorities they cite as providing aids to the construction of the constitution. Rules from books on grammar and usage or from previous cases, although helpful, are not controlling in determining whether particular language is unambiguous. Writers—even writers of statutes and constitutions (and of opinions)—do not always follow the rules.

To hold section 15a to be unambiguous, we must be able to say that it can reasonably be given only one meaning, giving due regard to the way people actually speak and write. We are convinced that the provision can be fairly read in at least two ways, depending on whether "declaring an emergency" modifies "provision" or "bills." It may mean, as defendants argue, that the Governor may veto any provision of a bill if the bill contains an emergency clause. On the other hand, it may mean only that the Governor may veto the provision which declares the emergency. As a matter of usage the first construction may be more likely to be correct, but it is by no means unambiguously correct, because the provision is clearly susceptible to a different interpretation. We therefore turn to the extrinsic evidence.

In 1916 the voters adopted a constitutional amendment giving the Governor an item veto on appropriation bills. In 1921 the legislature proposed to amend that provision to its present form, and the voters approved the change. The official explanation in the Voters Pamphlet, which was written by several legislators, began:

> "The governor now has, under the Constitution, the power to veto single items in appropriation bills. * * * The amendment now proposed would give him the power to veto the emergency clause of any bill, leaving the rest of the bill to stand. At present, if the emergency clause is objectionable, the governor can only veto the whole bill or allow it to become law."

The reason which the legislators gave for the proposed change was to preserve the people's right to refer legislation.

> "When the legislature passes a bill and attaches to it a valid emergency clause, providing that the bill shall take effect upon its passage, there can be no referendum on the bill; that

is to say, it cannot be referred to the people for their approval or rejection. It becomes a law at once. * * *

"* * * * *

"The chief reason for the amendment is to prevent undue encroachment upon the referendum power of the people."

The entire discussion assumed that all the Governor could do under this provision would be to veto an emergency clause. The only other evidence of contemporary understanding which the parties have provided relied on the same assumption.

 Although defendants try to suggest otherwise, there is no obvious reason to give the Governor an item veto in non-appropriation bills which contain an emergency clause but not in bills which do not. There is, however, an obvious reason to allow a veto of the emergency clause itself: As the proponents said, it would allow the Governor to preserve the right of referendum. Section 15a is susceptible to that reading, the history of its adoption argues for it and its role in the Oregon political system supports it. We therefore hold that the Governor may separately veto only the emergency clause of a non-appropriation bill which contains a provision declaring an emergency. His purported vetoes of other provisions of Senate Bill 137 were without legal effect. We therefore affirm the trial court.

Affirmed.